IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICK SPRINGER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: |
| SCCY INDUSTRIES, LLC, J4 TACTICAL LLC, | ) ) ) | CLASS ACTION |
| Defendants. | ) ) ) | JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff, Patrick Springer, individually and on behalf of all others similarly situated, through his undersigned counsel, alleges for his Class Action Complaint against Defendants, SCCY Industries, LLC, and J4 Tactical LLC based upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by his counsel as follows:

**NATURE OF THE ACTION**

1. This is a putative class action arising out of the design, manufacture and sale of an unreasonably dangerous firearm and holster combination by Defendants. Despite the holster being labeled for use with SCCY firearms and bearing the SCCY logo, their use in combination poses an unreasonable danger of accidental discharge of the type that occurred here and as described with particularity herein.

2. Plaintiff asserts claims on behalf of himself and all others similarly situated, as defined herein, for Alabama Extended Manufacturers' Liability (Count I), Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Count II), and negligence (Count III).

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), as this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class, which number in excess of 100, are citizens of states different from Defendants.

4. Personal jurisdiction over Defendant is proper insofar as each of the defendants has such contacts with this state that the prosecution of this action against them in this state is not inconsistent with the constitution of this state or the Constitution of the United States. *See* Ala. R. Civ. P. 4.2(b).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

6. Plaintiff, Patrick Springer, is a natural person residing in Birmingham, Alabama. Plaintiff is a member of the Class defined herein.

7. Defendant SCCY Industries, LLC ("SCCY"), is a Florida limited liability company with its principal place of business in Daytona Beach, Florida. SCCY is the manufacturer of the firearms described herein, including the CPX-2 purchased by Plaintiff and the putative class of consumers described herein.

8. Defendant J4 Tactical LLC ("J4 Tactical"), is a Louisiana limited liability company with its principal place of business in Monroe, Louisiana. J4 is the manufacturer of the holsters described herein, including the holster purchased by Plaintiff and the putative class of consumers described herein.

## BACKGROUND

9. SCCY designs, manufactures and sells handguns to consumers for use as sporting and personal defense arms.

10. Among the handgun models SCCY sells is the CPX-1, a hammer-fired, polymer frame double action only (DAO) semiautomatic pistol chambered in 9×19mm Parabellum. The CPX-1 is a compact firearm that feeds from a staggered column, removable magazine.

11. The CPX-1 is a locked breech design that uses an aluminum receiver set inside the polymer grip housing and attached with steel pins. The CPX-1 uses a slide and barrel machined from 416 stainless steel. The CPX-1 is equipped with a slide stop and locks open when the last round is fired. The handgun has an ambidextrous manual safety that is frame mounted.

12. SCCY designed the pistol with an internal hammer and has a double action trigger pull.

13. All parts of the CPX-1 pistol, except for the springs, are manufactured in-house by SCCY. Slides are manufactured from heat treated hex steel. The company molds its own polymer frames and makes its own magazines.

14. Every SCCY CPX-1 pistol carries a perpetual, transferable lifetime warranty.

15. SCCY manufactures, inter alia, a CPX-1 variant called the CPX-2. The CPX-2 eliminates the external manual safety found on the CPX-1. Like the CPX-1, the CPX-2 relies on the double action only (DAO) trigger pull, but requires 8.5 to 9 pounds of pressure, to help prevent unintentional discharge. A firing pin spring and low-mass hammer are designed to purportedly prevent discharge if the handgun is dropped.

16. At all times relevant hereto, J4 Tactical, pursuant to the terms of an agreement between SCCY, J4 Tactical manufactured and sold holsters purported to be specifically designed

for use with the SCCY CPX-1 and CPX-2 firearm models. The packaging of such holsters is emblazoned with the words "TAYLOR-MADE FOR SCCY" and contains the SCCY name, logo, website and street address. The packaging further states, "Precision contours provide a perfect fit for reliable retention & smooth draw." Finally, the front of the packaging describes the holster as a "CPX SERIES HOLSTER" that "FITS BOTH CPX-1 AND CPX-2 PISTOLS" and bears the SCCY Industries name and logo. Finally, the holster itself prominently displays the SCCY name and logo.

17. The above-described J4 Tactical holsters are designed to firmly hold the gun so that it does not dislodge from the holster while the user is in motion while still enabling him or her to quickly remove the gun when needed. This dual-purpose is achieved through the use of a hollow shell made of a thermoplastic rigid material molded to accommodate the SCCY CPX-1 or CPX-2 handgun. A metallic clip allows the user to secure the holster to his or her belt.

18. To maintain a grip on the weapon, J4 Tactical employ a design consisting of two pinch points where the holster narrows near the trigger area. Although they are purportedly designed, as well as packaged and advertised, for use with SCCY models CPX-1 and CPX-2, the inner pinch point (which is longer and narrower than the outer point) of J4 Tactical holsters can come into contact with the trigger of the firearm and cause an accidental discharge. Photos published by SCCY of a CPX-2 holstered in the J4 Tactical holster appear below.





19. In addition to the above design defects, J4 Tactical holsters are made from rigid thermoplastic material so that rather than bending when it comes into contact with the trigger, it places pressure thereon and causes the gun to accidentally fire.

20. Despite the above dangers, neither SCCY nor J4 Tactical provided any warning the above dangers or that holstering a loaded CPX-1 or CPX-2 in a J4 Tactical holster may result in an accidental discharge.

## FACTS RELATING TO PLAINTIFF

21. On or about April 2, 2016, Plaintiff purchased a new SCCY model CPX-2 handgun from an authorized, licensed retailer in Birmingham, Alabama, for $269.00 plus applicable sales tax.

22. The same day, Plaintiff purchased a new J4 Tactical holster labeled for use with the above-described SCCY firearm from an authorized retailer in Fultondale, Alabama, for $29.99 plus applicable sales tax.

23. On or about April 23, 2016, in Birmingham, Alabama, Plaintiff attempted to holster his SCCY CPX-2. In doing so, the inner pinch point of the J4 Tactical holster came into contact with the trigger of the gun as described herein, causing it to fire and strike Plaintiff in the leg, seriously injuring him.

## CLASS ACTION ALLEGATIONS

24. This action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), as set forth below.

25. *Class Definition.* Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), of which Plaintiff is a member:

> All persons or entities domiciled in the United States or its territories who purchased from an authorized retailer an SCCY model CPX-1 or CPX-2 handgun and/or an J4 Tactical holster labeled for use with such firearms.

26. *Numerosity.* The members of the Class are so numerous and geographically dispersed throughout the United States such that joinder of all members is impracticable.

Plaintiff believes that there are thousands of persons in the Class. The exact number and identity of Class members is unknown to Plaintiff at this time and can only be ascertained from information and records in the possession, custody or control of Defendants.

27.     *Commonality.*  There are questions of law or fact common to the Class including, *inter alia*, the following:

    a.     whether the Products were unreasonably dangerous in construction or composition, in design, by lacking an adequate warning, or by failing to conform to an express warranty of Defendants;

    b.     whether the warranties covering the Products complied with the requirements of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*;

    c.     whether Defendants failed to exercise ordinary care and breached their duty by, *inter alia*, (1) failing to use due care in the manufacture, distribution, design, sale and testing of the Products and their component parts, (2) failing to provide adequate warning of the aforementioned injuries and risks, (3) failing to incorporate within the Products and their design reasonable safeguards and protections against the defects described herein and the consequences thereof; (4) failing to make timely corrections to the design of the Products and to correct the defects described herein; and (5) failing to adequately identify and mitigate the hazards associated with the defects described herein in accordance with, *inter alia*, good engineering practices;

    d.     whether Plaintiff and the members of the Class are entitled to their damages and the appropriate measure thereof; and

    e.     whether equitable or injunctive relief is appropriate.

28. *Typicality.* The claims of Plaintiff are typical of the claims of the Class alleged herein. Plaintiff and other members of the Class are all persons or entities who purchased from an authorized retailer an SCCY model CPX-1 or CPX-2 handgun and/or a J4 Tactical holster labeled for use with such firearms, which Plaintiff alleges are defective.

29. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex and class action litigation. The interests of Plaintiff are aligned with, and not antagonistic to, those of the Class.

30. *Fed. R. Civ. P. 23(b)(2) Requirements.* The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist, as Defendant has acted or has refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

31. Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

32. Defendant's uniform common course of conduct make declaratory relief with respect to the Class as a whole appropriate.

33. *Fed. R. Civ. P. 23(b)(3) Requirements.* This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

34. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such

litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for individual Class members.

35. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## COUNT I

### (Alabama Extended Manufacturers' Liability)

36. Plaintiff repeats and realleges the allegations made in Paragraphs 1 through 35, *supra*, as though fully stated herein.

37. Defendants sold the Products in a defective condition unreasonably dangerous to the Plaintiff and the Class as the ultimate users or consumer.

38. At all times material hereto, Defendants were engaged in the business of selling such Products, which were expected to, and did, reach Plaintiffs and the Class without substantial change in the condition in which they were sold.

39. The Products are unreasonably dangerous for the following reasons:

   a. They are unreasonably dangerous in construction and/or composition;

   b. They are unreasonably dangerous in design;

   c. They are unreasonably dangerous because an adequate warning about the Products was not provided; and/or

   d. They are unreasonably dangerous because they do not conform to the express warranties of Defendants about the Products.

40. As a result of the foregoing, Plaintiffs and the Class were damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## COUNT II

### (Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*)

41. Plaintiff repeats and realleges the allegations made in Paragraphs 1 through 35, *supra*, as though fully stated herein.

42. At all times material hereto, there was in full force and effect a federal statute commonly referred to as the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

43. Jurisdiction of this claim is proper under 28 U.S.C. 1332(d)(2).

44. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

45. Defendants are "suppliers" and "warrantors" within the meaning of Section 2301(4) and (5) of the MMWA.  15 U.S.C. § 2301(4)-(5).

46. The Products are "consumer products" within the meaning of Section 2301 of the MMWA.  15 U.S.C. § 2301(1).

47. Section 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  15 U.S.C. § 2301(d)(1).

48. Defendants' express warranties are written warranties within the meaning of Section 2301(6) of the MMWA.  15 U.S.C. § 2301(6).

49. The Products carry implied warranties within the meaning of Section 2301(7).  15 U.S.C. § 2301(7).

50. Defendant breached these warranties as described in more detail above.

51. Without limitation, the Products share a common design defect.  Although they are designed for use with SCCY models CPX-1 and CPX-2, the inner pinch point (which is

longer and narrower than the outer point) of J4 Tactical holsters can come into contact with the trigger of the firearm and cause an accidental discharge.  In addition to the above design defects, J4 Tactical holsters are made from rigid thermoplastic material so that rather than bending when it comes into contact with the trigger, it places pressure thereon and causes the gun to accidentally fire.

52.    Plaintiff and Class members have had sufficient direct dealings with either Defendants or their agents, including retailers, to establish privity of contract between Defendants, on the one hand, and Plaintiff and Class members, on the other.  Nonetheless, privity is not required in this case because Plaintiff and Class members are intended third-party beneficiaries of contracts between Defendants and retailers, and specifically, of Defendants' implied warranties.  The retailers were not intended to be the ultimate consumer of the Products and have no rights under the warranty agreements provided with the Products; the warranty agreements were designed for and intended to benefit consumers such as Plaintiff and members of the Class.  Finally, privity is not required because the Products are dangerous instrumentalities due to the above-referenced defects.

53.    Affording Defendants a reasonable opportunity to cure their breaches of warranty is unnecessary and requiring otherwise would be futile.  At the time of sale of the Products, Defendant knew, should have known, or was reckless in not knowing of its misrepresentation that the Products would not safely perform as warranted, but nonetheless failed to rectify the situation or disclose the dangerous defects in their design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff resort to an informal dispute resolution procedure or afford Defendants a reasonable opportunity to cure their breaches of warranty is excused.

54. As a result of the foregoing violations of the MMWA, Plaintiff and members of the Class have damaged in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## COUNT III

### (Negligence)

55. Plaintiff repeats and realleges the allegations made in Paragraphs 1 through 35, *supra*, as though fully stated herein.

56. At all times material hereto, Defendants designed, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied, and sold to distributors and retailers for sale, the subject Products and/or their component parts.

57. Defendant owed Plaintiff and members of the Class a duty to exercise reasonable care in the design, testing, manufacture, assembly, sale and distribution of the Products, including but not limited to a duty to ensure that the Products did not cause Plaintiff, the Class Members, other users, bystanders, or the public unnecessary damages.

58. In addition, Defendants knew or should have known that the Products are defectively designed. Although they are purportedly designed, as well as packaged and advertised, for use with SCCY models CPX-1 and CPX-2, the inner pinch point (which is longer and narrower than the outer point) of J4 Tactical holsters can come into contact with the trigger of the firearm and cause an accidental discharge. In addition to the above design defects, J4 Tactical holsters are made from rigid thermoplastic material so that rather than bending when it comes into contact with the trigger, it places pressure thereon and causes the gun to accidentally fire.

59. Defendants also knew or should have known that the Products are defectively designed and/or manufactured and was therefore prone to and have caused injury as described herein.

60. Defendants failed to exercise ordinary care and breached their duty by, *inter alia*:

    a. Failing to use due care in the manufacture, distribution, design, sale and testing of the Products and their component parts in order to avoid the aforementioned injuries and risks;

    b. Failing to provide adequate warning of the aforementioned injuries and risks;

    c. Failing to incorporate within the Products and their design reasonable safeguards and protections against the defects described herein and the consequences thereof;

    d. Failing to make timely corrections to the design of the Products and to correct the defects described herein;

    e. Failing to adequately identify and mitigate the hazards associated with the defects described herein in accordance with, *inter alia*, good engineering practices; and

    f. Acting otherwise carelessly and/or negligently.

61. The aforementioned negligent acts and omissions of Defendants were the direct and proximate cause of Plaintiff's and Class members' damages.

62. Plaintiff and Class members are therefore entitled to damages in an amount to be proven at trial together with interest thereon.

63. Despite the fact that Defendants knew or should have known of the defects inherent in the Products, Defendants continued to market and sell the Products to consumers,

including Plaintiff and Class members, and failed to issue timely warnings to retailers, purchasers or owners of the Products.

64. Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety of the purchasers and owners of the Products, including Plaintiff and Class members, by suppressing and/or withholding knowledge of their dangerous defects from the general public. Defendant made a conscious decision not to recall, warn, or inform the unsuspecting public.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, prays for judgment in their favor and against Defendants and for the following relief:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, certifying the Class defined herein and designating Plaintiff as representative of the Class and his undersigned counsel as Class counsel;

B. Awarding Plaintiff and the Class their economic and compensatory damages in amounts to be determined trial, but not less than $5,000,000.00, and pre- and post-judgment interest thereon;

C. Awarding Plaintiff and the Class their general damages in an amount to be proven at the time of trial and pre- and post-judgment interest thereon;

D. Granting appropriate injunctive and declaratory relief;

E. Awarding Plaintiff and the Class their attorneys' fees, costs and expenses; and

F.  Awarding such other and further available relief and any other relief the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  February 23, 2017                    Respectfully submitted,

 /s/ Dennis G. Pantazis
Dennis G. Pantazis
D. G. Pantazis Jr.
WIGGINS CHILDS PANTAZIS FISHER GOLDFARB LLC
301 Nineteenth Street North
Birmingham, Alabama  35203
(205) 314-0500
dgp@wigginschilds.com
dgpjr@wigginschilds.com

William M. Sweetnam
SWEETNAM LLC
100 North La Salle Street, Suite 2200
Chicago, Illinois  60602
(312) 757-1888
wms@sweetnamllc.com

*Attorneys for Plaintiff and the Class*